**United States v. Allen (23-cr-261)**

**Verdict Script**

**Background**

The government has accused Defendant Terry Allen of various offenses relating to the events of January 6, 2021, at the United States Capitol Building.

Mr. Allen is charged with eight counts: (1) Count One for civil disorder; (2) Counts Two and Three for assaulting certain officers using a deadly or dangerous weapon; (3) Count Four for entering and remaining in a restricted building or grounds with a deadly or dangerous weapon; (4) Count Five for disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon; (5) Count Six for engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, (6) Count Seven for disorderly conduct in a Capitol Building or ground; and (7) Count Eight for an act of physical violence in a Capitol grounds or building.

I want to note that the indictment identifies both the flagpole and a metal pole as the deadly or dangerous weapon used by Defendant.

**Findings of Fact**

The court makes the following findings of fact.

<u>Preliminary findings</u>

USCP Lieutenant George McCrea and Sergeant Timothy Lively both testified that U.S. Capitol Police had established a security perimeter for the certification of the Electoral College vote prior to January 6th and on the day itself.  See Gov't Ex. 004.  According to Lt. McCrea and Sgt. Lively, the security perimeter was visible and established with bike racks, snow fencing, and "Area Closed" signs affixed to the bike racks and snow fencing, as well as the physical presence of police personnel.  This fact was confirmed by multiple exhibits.  Gov't Exs. 402, 403.  The court credits the testimony that a security perimeter consistent with Government Exhibit 4 was established on January 6.

Inspector Linnell Hawa testified that the Secret Service worked in coordination with the USCP to establish a security perimeter at the Capitol on January 6 because the Vice President, his wife, and daughter, all of whom are Secret Service protectees, would be visiting the Capitol that day so that VP Pence could preside over the scheduled Joint Session.  Also, Sgt. Lively testified that no demonstrations were authorized within the secure perimeter.  The building itself was closed to the public.

Vice President Pence and his family arrived at the U.S. Capitol on January 6th at 12:30 p.m.  The Joint Session began at approximately 1:00 p.m. in the House chamber.  Gov't Ex. 501, 700.

After an objection was lodged to Arizona's electoral votes, the Houses split and retired to their respective chambers.  Vice President Pence went to his office.  Inspector Hawa testified that, sometime after 1:15 p.m., she began to hear radio transmissions indicating large crowds were

gathering outside the Capitol building. Eventually, she learned that there had been a security breach on the West side of the Capitol. The decision was then made to move the Vice President and his family to a secure location. That occurred shortly before 2:30 p.m. According to Inspector Hawa, the Vice President remained at the secure location until later that evening, for approximately five hours. Inspector Hawa testified it was not advisable to bring the Vice President back to either the House or Senate chambers until the building had been cleared.

Lt. McCrea testified that the first breach of the Capitol building itself took place at 2:13 p.m. At about that same time, the Senate recessed. Gov't Ex. 700. The House initially recessed at around 2:15 p.m. and then resumed, only to recess for good at about 2:30 p.m. *Id.*

The Certification proceedings resumed sometime after 8:00 p.m. *Id.*

Allen Pre-Capitol Breach

Prior to January 6, Mr. Allen attended two political rallies in Washington, D.C. in November and December 2020 supporting then-President Donald Trump. At least one of the rallies occurred near the U.S. Capitol. Video evidence established that Mr. Allen was knowledgeable about the November 2020 election and the controversy surrounding it. Another video showed Mr. Allen wearing the same gloves at an earlier rally that he later would wear on Jan 6. Gov. Ex. 313. On one video exhibit, after someone screamed "Antifa," referring to his gloves, Mr. Allen was recorded as saying, "I wanna try these new gloves out," implying he wanted to wear the gloves in an altercation. Also, Mr. Allen had on the gloves while wearing a t-shirt, suggesting that when he wore the same gloves on January 6 they were not merely for warmth.

Evidence presented at trial did not establish when Defendant left his home in Pennsylvania to attend the January 6 rally in Washington, D.C. The parties stipulated that Defendant was present at Capitol grounds on January 6 starting at approximately 12:55 p.m. They also stipulated that Defendant wore a white sweatshirt featuring colored images and lettering, an army green backpack, a camouflage "Trump" hat, and he carried a black and red flag on a wooden flagpole approximately five feet in length. Gov. 700.

Garfield Circle

Mr. Allen arrived at the Capitol grounds shortly before 1:00 p.m. near the Garfield Circle located at First Street and Maryland Avenue SW. Videos show Mr. Allen and others standing directly outside the stone wall near southwest entrance to the Capitol grounds. Gov. Ex. 203 at 4:40. There were bike racks placed along the edge of the sidewalk. On the other side of the stone wall were two rows of snow fencing. On the first row, there were numerous Area Closed signs. Mr. Allen can be seen reaching his wooden flagpole over the stone wall and smacking the first line of snow fencing. *Id.* at 4:56. The court has no doubt that Mr. Allen would have seen the snow fencing and the Area Closed signs affixed to them.

A few moments later, the crowd breached the bike racks inside the Capitol grounds on the Garfield Circle side. Video captures Defendant walking down the Maryland Avenue walkway around 12:56 p.m. Gov. 203.

Lower West Terrace

Defendant reached the Lower West Terrace by 12:58 p.m.  Gov. 204.  He was among the first 50 or so people to arrive at the southern part of the LWT.  After his arrival, Defendant proceeded to first stand atop a low wall.  From there, he would have seen police officers protecting the front edge of the LWT, immediately behind a 2–3 foot tall metal fence that had been specially erected for the Inauguration.

About a minute later, the gathered crowd manages to get through the fence and enters the LWT and begins moving towards the scaffolding on the southern portion of the LWT.  Mr. Allen hopped off the wall and briskly moved towards the LWT and joined the crowd there.  He walked through the open fence, so he would have seen it as he passed by.  Gov. 204.  He then disappeared under the scaffolding for a short time.

Just after 1:00 p.m., one can see Defendant's sweatshirt and backpack peak out from under the scaffolding, and he assisted in passing a bike rack from underneath the scaffolding into the crowd.  Gov. 206A.  About 50 seconds later, he emerged from the scaffolding and joined the crowd just to the north of the scaffolding.  At 1:02 p.m., he walked towards the front and held his arm up in a 90-degree angle and appeared to scream something.  Moments later, he appeared to stomp on something on the ground but can't see what it is.

At 1:06 pm, a scuffle broke out between police and demonstrators near the southern part of the Lower West Terrace.  Mr. Allen is in the middle of it.  It appears that a radio, and possibly a second object, drop to the ground.  Mr. Allen appears to use his flagpole seemingly to rake the radio in his direction.  He is then jostled, makes two jabbing motions, and then stumbles back.  He recovers and then remains in the melee and continues to thrust his flagpole forward for at least another 10 seconds, before the fracas comes to an end.  Gov. Ex. 301, 303.

By 1:23 pm, the police have restored some order and Defendant is near the front of the police line, still at the LWT.  Video shows him seen leaning down near the police line, picking up a portion of the metal fence temporarily erected for the Inauguration, and carrying it to the back into the crowd.  Gov. 206B, 305.

By 1:56 pm, Defendant is again at the front of another police line, this time on the northern end of the LWT.  Body worn camera footage depicts Defendant standing about six feet from a line of bike racks separating the police from the crowd.  Gov. Ex. 402.  He can be seen holding the flagpole vertically in his left hand and a metal pole in his right hand that appears to be from the temporary metal fencing.  *Id.*  Over the next 30 seconds, others confronted officers and jostled against the bike racks.  Officers ordered people off the bike racks.  At 1:56:28 p.m., Defendant lowered the flagpole parallel to the ground, such that its tip was less than three feet from the police line.  Officer Alioto testified that he remembered seeing Defendant in this posture, which he described as an aggressive stance.  About seven seconds later, he raised the flagpole back up vertically.

Defendant then lowered the flagpole again momentary and began to walk to his right parallel to the police line, when an officer deploys pepper spray that hit Defendant in the face.  At the time the pepper spray was deployed, rioters were directly engaged with the police and pulling on the

3

bike rack and pressing their bodies against it.  Upon being hit with the spray (which may or may not have been directed at him), Defendant pulled his right arm back and threw the metal pole like a javelin at the police line.  As the pole come through the police line, the video shows at least one officer flinch as the pole flies through the air.  Gov. Ex. 406. The pipe lands behind the officers and the video captures a loud clang as it hits the ground.  Gov. Ex. 401. Both Sgt. Lively and Sgt. Alioto testified that the metal pole was capable of causing serious bodily injury to an officer.

Mr. Allen then walked back into the crowd.  FBI Agent Reite testified that video showed Defendant bending over with people next to him.  Photos also show Defendant with an orange towel pressed against his face.  Def. Ex. 407b.

Mayor Bower ordered a curfew at 2:31 p.m. that afternoon.  Evidence showed that Safeways closed at 4 p.m. in anticipation of the curfew.  Sales were lower at all stores on January 6, 2021 vs. January 5, 2020.

**Count 1: Obstructing Officers During a Civil Disorder**

Counts 1 of the Indictment charges Mr. Allen with obstructing officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3).

In order to find Defendant guilty of these offenses, I must find that the government proved each of the following elements beyond a reasonable doubt.

*First*, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with law enforcement officers.

*Second*, at the time of the defendant's actual or attempted act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

*Third*, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

The parties stipulated that, on January 6, USCP and MPD officers on the Capitol grounds were engaged in their official duties as officers, as used in 18 U.S.C. § 1114.  So, there is no dispute as to the second element.

- Element 3: Evidence showed that there was a civil disorder at the Capitol on Jan 6, and that it affected commerce (Safeway) and federally protected functions (Capitol Police and Secret Service)
- Element 1:  He knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with law enforcement officers.
    - Defendant was an eager participant on Capitol grounds: he rushed to the scaffolding on the LWT, he helped to remove bike rack from underneath scaffolding, rushed to front when fight broke out between officers and demonstrators, and he took a

4

segment of the metal fence fencing to the back of the crowd. He was no mere bystander.

- He committed multiple acts with the specific intent to obstruct, impede or interfere:
    - Assisted in removing a bike rack from underneath the scaffolding. He would have known that the bike rack was meant to demarcate a police line and for crowd control.
    - Participated in the scuffle on the LWT – he was presented in that scuffle while police were attempting to engage in crowd control, and he can be seen using his flagpole during that time. Don't need to resolve for purposes of this count whether he used the flagpole forcibly. It is enough that he is engaged in the melee with the flagpole for 15 seconds while officers are battling with others. That is impeding or interfering with law enforcement.
    - He then took a piece of fencing back into the crowd. This is a second barrier that Defendant would have understood the crowd could not go past. Removing the fencing facilitated the crowd when it eventually moved forward onto the LWT and into the Capitol.
    - Threw the metal pole. Talk about that in connection with Count 3.

I therefore find Defendant guilty on Count 1.

**Counts 2 & 3: Assaulting, Resisting, Or Impeding Officers**

Counts 2 and 3 of the Indictment charge Mr. Allen with assaulting, resisting, or impeding officers in violation of 18 U.S.C. § 111(a)(1) and (b). For Count 2, the government alleges that Mr. Allen assaulted officers at the LWT around 1:06 p.m. by using the wooden flag to strike officers or attempt to do so. For Count 3, the government alleges that the assaultive conduct occurred around 1:56 p.m. when Mr. Allen threw a black metal rod at officers at the LWT.

To find the defendant guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt.

*First*, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer or officers from the U.S. Capitol Police.

*Second*, the defendant acted forcibly, that is, "attempted to use force, or threatened to use force against the officer."

*Third*, the defendant did such acts voluntarily and intentionally.

*Fourth*, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his or her official duties.

*Fifth*, in doing such acts, the defendant intentionally used a deadly or dangerous weapon.

5

*Sixth*, as to Count 3, he did not act in self-defense.

Count 2.  I cannot find beyond a reasonable doubt that he acted forcibly, i.e., "attempted to use force, or threatened to use force against the officer."  The videos are ambiguous.  His first two stabs of the flagpole clearly were aimed at the ground.  What follows are two more, then a stumble, and then additional stabs.   But it is difficult to discern the angle of the flagpole and the extent to which it is directed at the police officers, who are being attacked and backed up by rioters.  Therefore, will find Defendant not guilty of Count 2.

Count 3.  Throwing of the metal rod at the police line.

- Element 1: Clearly an act of assault, opposing, intimidating officers.
- Element 2: Acted forcibly.  He threw the metal pole in a manner that was plainly directed at officers; he threw it with force, as Defendant pulled his arm back and aggressively threw at the police, as one would throw a spear or javelin.
- Element 3: Voluntary and intentional.  Was not a mistake or an accident.  Purposeful threw the metal pole at the police line from six feet away as if it were a spear or javelin.
- Element 4: Officers were then engaged in the performance of their duties.
- Element 5: Intentionally used a deadly or dangerous weapon, i.e., an object capable of causing serious bodily injury or death to another person and the defendant used it in that manner.  That object was a metal pole, which appeared to be taken from the temporary metal fencing erected for the Inauguration.  Although no direct evidence of weight, it was close to three feet in length and, when it hit the ground, made the distinct sound of metal hitting the ground.  No doubt that the pole could have caused serious bodily injury if it had struck an officer in the face.  And there were officers at the line who did not have a helmet or face shield.  In fact, one officer flinches as the pole flew by.  I am not relying on speculation to conclude that the pole, if it had struck an officer, could have caused serious bodily injury.  That conclusion is self-evident.
- Element 6: Did not act in self-defense.  Government has shown that whichever officer used pepper spray did not act with excessive force.  It was a chaotic scene and some rioters were grabbing the bike rack and pressing their weight against the bike racks.  Officer Alioto testified that the use of pepper spray was a reasonable use of non-lethal force, and I credit that testimony.  Also, throwing of a metal pole like a javelin was an unreasonable use of force, even if Defendant could be said to have had a reasonable fear of harm in that moment.
- Therefore, I find him guilty of Count Three.

**Count 4: Entering and Remaining in a Restricted Building or Grounds With A Dagerous Deadly Weapon**

Count 4 of the Indictment charges Mr. Allen with entering or remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1), with a deadly or dangerous weapon, under § (b)(1)(A).  In order to find the defendant guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt:

6

*First*: that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

*Second*: that the defendant did so knowingly.

*Third*: the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

- Element 1: he did enter and remain in a restricted building or grounds. USCP established a security perimeter. Defendant was inside that perimeter and did not have authority to be there.
- Element 2: he knew he was not authorized to be there. Saw the Area Closed signs. Saw the police at the LWT and rushed by them to the scaffolding. Removed a bike rack from underneath the scaffolding. Carried the fencing back. And the entire scene itself would have made clear he was not authorized to be there.
- Element 3: used a deadly or dangerous weapon. Threw the metal pole at the police line.
- To the extent self-defense is a defense to use of a deadly or dangerous weapon, the court already has concluded that the government carried its burden to show that Defendant did not act in self-defense.
- I therefore find Defendant guilty of Count 4.
- I note that the court does not believe the government has to prove beyond a reasonable doubt that Defendant knew the VP or a Secret Service protectee was or would be present. However, if the Circuit disagrees, I find that the government has not proven he had that knowledge beyond a reasonable doubt. True, Defendant had knowledge about the electoral process but there is no evidence that he understood the Vice President's role in the process.

**Count 5: Disorderly and Disruptive Conduct**

Count 5 of the Indictment charges Mr. Allen with disorderly or disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2), with a deadly or dangerous weapon, under § (b)(1)(A). To find Mr. Allen guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt:

*First*: that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

*Second*: that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

*Third*: that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

*Fourth*: the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

7

- Element 1: he engaged in disorderly or disruptive conduct on restricted building or grounds. The throwing of the metal pole alone constituted disorderly or disruptive conduct.
- Element 2: his conduct was knowing. And acted with intent to impede or disrupt the orderly conduct of Government business or official functions. Evidence clearly showed that Defendant had a knowledge of the ongoing dispute about the November 2020 election results, as expressed during a video interview at a rally before January 6. He came to two rallies in Washington, D.C. before January 6. And he gathered with tens of thousands of others at the U.S. Capitol at the precise time that Congress had gathered for a Joint Session to certify the Electoral College vote. By his actions, it is evident he intended to impede or disrupt the workings of Congress and, as importantly, the work of the police officers who were on Capitol grounds that day to protect Members of Congress.
- Element 3: his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions. Those include police functions, Secret Service functions, and the counting of the Electoral College votes.
- Element 4: knowing used or carried a deadly or dangerous weapon during and in relation to the offense. Threw a metal pole directly at police in a manner that was capable of causing, at least, serious bodily injury.
- To the extent self-defense is a defense to use of a deadly or dangerous weapon, already concluded that the government has carried its burden to show that Defendant did not act in self-defense.
- I therefore find Defendant guilty of Count 5.

**Count 6: Engaging in Violence In A Restricted Building Or Grounds With A Deadly Or Dangerous Weapon**

Count 6 of the Indictment charges Mr. Allen with engaging in physical violence in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(4), with a deadly or dangerous weapon, under § (b)(1)(A). To find Defendant guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt.

*First*: the defendant engaged in an act of physical violence against a person or persons in, or in proximity to, a restricted building or grounds.

*Second*: the defendant did so knowingly.

*Third*: the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

- Element 1: he did engage in an act of physical violence against a person or persons, i.e., throwing of the metal rod at the police line, in a restricted building or grounds.
- Element 2: he did so knowingly, and not be mistake, accident, or involuntarily.

8

- Element 3: knowingly used or carried a deadly or dangerous weapon during and in relation to the offense. Threw a metal pole directly at police in a manner that was capable of causing, at least, serious bodily injury.
- To the extent self-defense is a defense to use of a deadly or dangerous weapon, already concluded that the government has carried its burden to show that Defendant did not act in self-defense.
- Therefore, guilty of Count 6.

**Count 7: Disorderly Conduct In A Capitol Building Or Grounds**

Count 7 of the Indictment charges the defendant with disorderly and disruptive conduct in a Capitol Building or Grounds in violation of 40 U.S.C. § 5104(e)(2)(D). In order to find the defendant guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt:

*First*: the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

*Second*: the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

*Third*: the defendant acted willfully and knowingly.

- Element 1: the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds, i.e., removing bike rack from underneath the scaffolding, participating in the scuffle in the LWT, removing fencing, and throwing a metal pole at police officers.
- Element 2: did these acts with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress. Defendant would have known Congress was meeting at that time. He was among the first to arrive at the LWT and he remained on Capitol grounds for at least an hour. During that time, he engaged with the police multiple times and took steps to interfere with their work. In my judgment, Defendant was looking to advance as far as he possibly could into the Capitol complex, as demonstrated, at the very least, by his moving quickly towards the scaffolding on the LWT and his removal of a bike rack from underneath that scaffolding. He had the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress, even though he never made it into the building.
- Element 3: he acted willfully and knowingly.
- I therefore find him guilty of Count 7.

**Count 8: Act Of Physical Violence At The Capitol Building Or Grounds**

Count 8 of the Indictment charges the defendant with an act of physical violence in the Capitol Building or Grounds in violation of 40 U.S.C. § 5104(e)(2)(F). In order to find the defendant guilty of this offense, I must find that the government proved each of the following elements beyond a reasonable doubt:

*First*, the defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

*Second*, the defendant acted willfully and knowingly.

- Element 1: he did engage in an act of physical violence on Capitol grounds, i.e., throwing a metal pole like a spear or javelin towards a line of police officers.
- Element 2: he did act willfully and knowingly, and without mistake, accident, or unintentionally.
- To the extent self-defense is a defense to this charge, already concluded that the government has carried its burden to show that Defendant did not act in self-defense.
- I therefore find him guilty of Count 8.

Finally, admit Defense Exhibits 205 and 206 A&B, but those filings do not alter the court's findings or verdicts, as those documents only describe the conduct of others, and there is no basis to conclude that anyone else other than Defendant committed the acts of which he stands accused.

In summary, the court finds Defendant guilty of all counts except Count 2.